**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                      Case No. 06-CR-20411

RUDOLPH DALRON WILLIAMS, et al.,

    Defendants.
_____/

**ORDER DENYING DEFENDANT'S "MOTION TO SUPPRESS BLOOD
IDENTIFICATION DNA TESTIMONY, OR IN THE ALTERNATIVE CONDUCT
DAUBERT HEARING"**

Pending before the court is Defendant Rudolph Williams' "Motion to Suppress Blood Identification DNA Testimony, or in the Alternative Conduct Daubert Hearing," filed on October 16, 2009.  Defendant Frank Pierce joins in this motion.  The Government filed a response on October 27, 2009.  Having reviewed the briefs, the court concludes a hearing on this motion is unnecessary.  *See* E.D. Mich. LR 7.1(e)(2).  For the reasons stated below, the court will deny Defendants' motion.

**I. BACKGROUND**

Defendants Rudolph Dalron Williams, Frank Pierce, Daryl Pierce, Derrick Young, and Clarence Jackson were charged in an indictment with conspiracy with intent to distribute controlled substances and with killing a person while engaged in an offense punishable under 18 U.S.C. § 924(c).  The Government alleges that Defendants lured Antonio Brown to a house at 12915 Stahelin St., Detroit, Michigan, where they handcuffed and beat him.  (Gov't's Resp. at 1.)  Thereafter, the Government alleges that Defendants moved Brown to other locations and eventually killed him.  (*Id.*)

Upon execution of a search warrant at 12915 Stahelin, police found traces of human blood. (*Id.*) The blood was then sent to Bode Technology in Lorton, Virginia. (Defs.' Mot. Br. at 2.) Julie Hutchison of Bode Technology issued a forensic case report dated April 25, 2007, based on the analysis of six items of evidence submitted for DNA analysis. (*Id.*) The report states that "the profile obtained from one of the samples submitted matches the known profile obtained from Antonio Brown." (*Id.*) The profile that matched Brown's DNA came from the bloodstain at 12915 Stahelin. (*Id.*)

Defendants filed the present motion seeking to exclude the proposed blood identification DNA testimony of Julie Hutchinson. (Defs.' Mot. at 1.) Defendants object to the admission of Hutchinson's report because "[o]nly two of the thirteen loci are in common between the known Antonio Brown DNA and the so called 'matched' sample." (Defs.' Mot. Br. at 2.)

## II. DISCUSSION

### A. Federal Rule of Evidence 702

Defendant argues that because only two of the loci were common between the known and unknown blood samples, the testimony is not based on sufficient facts or data under Federal Rule of Evidence 702. (Defs.' Mot. Br. at 4.) In its response, the Government asserts that DNA evidence is admissible in criminal trials and that Defendant's attack goes to the weight, not the admissibility of the evidence. (Gov't's Resp. at 1-4.)

Federal Rule of Evidence 702 provides that:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1)

2

> the testimony is based upon sufficient facts or data, (2) the testimony is
> the product of reliable principles and methods, and (3) the witness has
> applied the principles and methods reliably to the facts of the case.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* the Supreme Court held that, when faced with a proffer of expert scientific testimony, the trial judge is assigned "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." 509 U.S. 579, 597 (1993). The trial judge is to consider "whether the reasoning or methodology underlying the testimony is scientifically valid" and "whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* at 592-93. In making this determination, the following factors are considered: (1) "whether it can be (and has been) tested," (2) "whether the theory or technique has been subjected to peer review and publication," (3) "the known or potential rate of error," and (4) "general acceptance" in the "relevant scientific community." *Id.* at 593-94. Although this is a flexible inquiry, the trial judge's focus "must be solely on principles and methodology, not on the conclusions that they generate." *Id.* at 594-95. When determining the admissibility of expert testimony, "[t]he district court is not obligated to hold a *Daubert* hearing." *Clay v. Ford Motor Co.,* 215 F.3d 663, 667 (6th Cir. 2000).

### 1. Relevance

The court concludes that the DNA evidence is relevant to the case and will assist the trier of fact to determine a fact in issue. *See Daubert*, 509 U.S. at 592. Hutchison's testimony that the DNA profile of the bloodstain found by police at 12915 Stahelin matched the victim's DNA profile is evidence that the victim was at this house and was bleeding. If other evidence links Defendants to that house, then a jury could conclude that it is more likely that they were involved in the victim's murder.

3

## 2. Reliability

It is well-settled that the principles and methodology underlying DNA testing are scientifically valid. *United States v. Beverly*, 369 F.3d 516, 528 (6th Cir. 2004) ("The use of nuclear DNA analysis as a forensic tool has been found to be scientifically reliable by the scientific community for more than a decade."); *United States v. Bonds*, 12 F.3d 540 (6th Cir. 1993). In *Bonds*, a magistrate judge held a six-week hearing on the admissibility of forensic DNA testimony and evidence, and the district court admitted this evidence. 12 F.3d at 551. On review, the Sixth Circuit conducted an extensive *Daubert* analysis of the principles and methodology underlying DNA testing and held "that the testimony proffered by the Government about the DNA matching and probabilities easily met the *Daubert* standard and was admissible under Rule 702." *Id.* at 566. Over ten years later, in *Beverly*, the Sixth Circuit addressed the admissibility of mitochondrial DNA testing, which is "not as precise an identifier as nuclear DNA" and cannot "identify individuals with the precision of conventional DNA analysis." 369 F.3d at 529, 531. The court concluded that the mitochondrial DNA analysis was admissible under *Daubert* because the "scientific basis for the use of such DNA is well established," the testing methods utilized by the analyst were sufficiently reliable, and "[a]ny issues going to the conduct of the specific tests in question were fully developed and subject to cross examination." *Id.* at 531.

In this case, Defendants cannot challenge the validity of DNA testing generally, and indeed they acknowledge that "DNA expert testimony has been widely approved by the courts as a valid procedure for making identification of blood samples." (Defs.' Mot. Br. at 5.) Instead, Defendants contend Ms. Hutchison's testimony is inadmissible

4

because she "has unjustifiably employed a valid procedure to reach an unfounded conclusion." (*Id.*)  However, the focus of the *Daubert* inquiry is "solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 594-95. As the *Bonds* court explained, "[t]he assessment of the validity and reliability of the conclusions drawn by the expert is a jury question; the judge may only examine whether the principles and methodology are scientifically valid and generally accepted." *Bonds*, 12 F.3d at 563.  Defendants have provided no argument or evidence demonstrating that the principles and methodology of DNA testing utilized by Bode Technology are scientifically invalid.  Assessment of Hutchison's conclusion is a question for the jury, and Defendants will have ample opportunity at trial to cross-examine her regarding it. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

   As such, Defendant's argument goes to the weight, not the admissibility of the evidence.  DNA analysis, as with most scientific inquiries, is about probabilities, not absolutes.  *See Daubert*, 509 U.S. at 590 ("[T]here are no certainties in science.").  In this case, a match of two out of thirteen loci has some statistical probability associated with it.  *See generally Bonds*, 12 F.3d at 550-51.  The Sixth Circuit addressed a similar argument using the following example: the statistical DNA evidence was "essentially equivalent to finding that the last two digits of a license plate of a car owned by defendant matched the last two numbers of a license plate of a getaway car.  It would be some evidence-not conclusive, but certainly admissible." *Beverly*, 369 F.3d at 530. Even if matching two out of thirteen loci does not provide conclusive evidence that the

5

bloodstain at the house was that of the victim, it would seem to provide at least some evidence. The procedures from which this conclusion was drawn are scientifically sound; if Defendants want to challenge Hutchison's conclusion, they are free to do so by cross-examining Hutchison or offering their own expert. Accordingly, the court finds that Hutchison's testimony based on the DNA analysis is admissible under Rule 702, subject to the Government laying a proper foundation for the admissibility of this expert testimony. The court concludes that a *Daubert* hearing is unnecessary.

### B. Federal Rule of Evidence 403

Federal Rule of Evidence 403 states that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Civ. P. 403. "'Unfair prejudice,' as used in Rule 403, does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather, it refers to evidence which tends to suggest a decision on an improper basis." *United States v. Mendez-Ortiz*, 810 F.2d 76, 79 (6th Cir. 1986). Rule 403 is a "rule of inclusion" and therefore the court "must view the evidence in the light most favorable to its proponent, the government, and maximize its probative value." *United States v. McCutchen*, 150 F. App'x 517, 523 (6th Cir. 2005).

As explained above, the probative value of the DNA testimony is that it provides some evidence that the victim was at 12915 Stahelin and that he was bleeding while at that address. If other evidence links Defendants to that address, then a jury could conclude that it is more likely that they were the ones that murdered the victim.

The unfair prejudice to Defendants of this testimony is slight.  It is true that jurors in general may be inclined to place greater weight on scientific testimony.  *See McDaniel v. Brown*, --- S. Ct. ---, No. 08-559, 2010 WL 58361, at *9 (Jan. 11, 2010) ("Given the persuasiveness of [DNA] evidence in the eyes of the jury, it is important that it be presented in a fair and reliable manner.")  However, Defendants have not demonstrated that this evidence will be presented unfairly, and at trial, they will be free to attack the ultimate conclusion derived from the DNA analysis by cross-examination or their own expert.

Moreover, the evidence does not directly inculpate the Defendants, but instead merely provides some evidence that the victim was bleeding at a particular address.  There are two juror tendencies that must be guarded against with respect to DNA evidence:

> (1) that the jury will accept the DNA evidence as a statement of source probability (i.e., the likelihood that the defendant is the source of the evidentiary sample); and (2) that once the jury settles on a source probability, even if correctly, it will equate source with guilt, ignoring the possibility of non-criminal reasons for the evidentiary link between the defendant and the victim.

*United States v. Chischilly*, 30 F.3d 1144, 1156 (9th Cir. 1994).  Neither of these concerns applies to this case.  The analyst's conclusion was not that the Defendants' DNA was found on the victim, which would present source and guilt probability concerns, but instead her conclusion was that the DNA from a bloodstain at a particular residence matched the victim's DNA.

Further, just because the evidence, when combined with other evidence, may damage Defendants' cases, this does not mean that the prejudice is unfair.  *Mendez-Ortiz*, 810 F.2d at 79.  The testimony does not incite, inflame, arouse the sympathy of

the jurors, or suggest a decision based on an improper basis.  It is merely "some evidence" that the victim had lost blood at 12915 Stahelin, and there is nothing unfair about this proposition to Defendants.

In conducting the Rule 403 balancing test, the court finds that the danger of unfair prejudice does not substantially outweigh the probative value of admitting the blood identification DNA testimony.  Accordingly, Defendant's motion will be denied.

### III.  CONCLUSION

IT IS ORDERED that Defendants' "Motion to Suppress Blood Identification DNA Testimony, or in the Alternative Conduct Daubert Hearing" [Dkt. # 150] is DENIED.

           S/Robert H. Cleland
           ROBERT H. CLELAND
           UNITED STATES DISTRICT JUDGE

Dated:  January 15, 2010

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, January 15, 2010, by electronic and/or ordinary mail.

           S/Lisa G. Wagner
           Case Manager and Deputy Clerk
           (313) 234-5522